## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KENNETH MILLER,

      Plaintiff,

v.

FULTON COUNTY SCHOOL
DISTRICT, and MIKE LOONEY,
in his official and individual capacities,

      Defendants.

Civil Action File No.:

_____

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Kenneth Miller ("Plaintiff" or "Coach Miller"), by and through counsel, and files this COMPLAINT for injunctive relief, money damages, and attorney's fees against Defendant Fulton County Schools and Defendant Mike Looney, showing the Court as follows:

## NATURE OF ACTION AND INTRODUCTION

1.      Coach Miller brings this action to vindicate his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), 20

U.S.C. §§ 1681, *et seq.*, and 42 U.S.C. § 1981. In this case, Coach Miller seeks money damages, injunctive relief, and attorney's fees for the unlawful April 1, 2022, suspension of his employment contract with the Defendant Fulton County School District ("Fulton County Schools") for twenty working days. The suspension was imposed with inadequate due process; further, the suspension was motivated by illegal sex-based and race-based discrimination.

2.      On April 1, 2022, Defendant Fulton County Schools suspended Coach Miller's employment contract without pay for twenty days. This suspension constituted a deprivation of property and liberty interests without Due Process under the United States Constitution and also establishes an adverse employment action under Title VII, § 1981, and Title IX.

3.      This illegal suspension arose out of an altercation where Coach Miller had to defend himself against a physical attack from a Tri-Cities High School student, Aminah Salahudin ("A.S."), who earlier that day had brought guns to school. On August 20, 2021, Coach Miller was the athletic director for Tri-Cities High School, and he received a report that A.S. had brought a gun to school and had posted pictures of guns on social media. Coach Miller, along with an assistant principal and two school police officers, brought A.S. to an office where they asked her where the guns were. At the time of the confrontation Coach Miller and his colleagues did not know for sure where the guns were or if A.S. was

presently armed. Coach Miller had seen A.S. pass a bookbag to a friend in the video surveillance cameras, and he began showing A.S. a screenshot on his phone of the surveillance photo of A.S. passing her bookbag off in the hallway. This made A.S. get very agitated, and she began screaming at the top of her lungs.

4.     A.S. got more and more upset, and she began to scream and threaten the police officers in the room. One of the officers aimed her taser at A.S. because A.S. approached the officer in a threatening way, punching her fist into her hand. Then, A.S. began slamming a stapler into a desk and screaming in Coach Miller's face. Suddenly, A.S. violently slapped a phone out of Coach Miller's hand. Coach Miller reacted by pushing her off of him and away towards the wall. In the ensuing chaos, A.S. was tased and arrested for assaulting a teacher.

5.     No one in the room thought Coach Miller did anything wrong by defending himself from attack. Every single adult eyewitness (including an assistant principal and two police officers) interviewed by Fulton County Schools stated that "they did not witness any misconduct by Miller." Despite this overwhelming evidence that Coach Miller did nothing wrong, Fulton County Schools suspended Coach Miller for 20-days without pay. In doing so, it violated Coach Miller's constitutional rights and his right to be free from race and sex discrimination.

6.     As will be shown herein, Coach Miller's suspension was imposed with a woefully inadequate procedure in violation of the United States Constitution and United States Supreme Court precedent. The elements in this Circuit for a procedural due process claim under 42 U.S.C. § 1983 are: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993). As will be shown herein, Coach Miller has evidence to satisfy each element under *Cherry*.

7.     Here, Coach Miller suffered a 20-day suspension without even the most basic hallmarks of the American legal system: the right to testify in his own defense, the right to call witnesses for himself, the right to confront his accusers, the right to subpoena documentary evidence, the right to an unbiased decision-maker, the right to appeal to a higher court or authority. According to the Fulton County School Board Policy GBKL Sec. IX, the only process Fulton County Schools provides to an employee with up to a 20-day suspension is an oral argument where "[e]ach side shall have thirty (30) minutes to present its arguments to the hearing officer. Neither party shall have the opportunity to call witnesses."

8.     Fulton County School Board Policy GBKL ("Policy GBKL") further provides that only suspensions longer than 20-days can appeal to the Fulton

County Board of Education or the State Board of Education pursuant to O.C.G.A.
§ 20-2-1160, the normal statutory appeal process for teacher employment hearings
in Georgia. By its own terms, Policy GBKL denied Coach Miller the ability to
appeal; accordingly, there is no way for Coach Miller to petition any court to
"remedy that inadequacy" through an appeal. *See McKinney v. Pate*, 20 F.3d 1550,
(11th Cir. 1994). Further, Coach Miller cannot invoke the writ of mandamus to fix
or review the suspension already imposed; mandamus will not undo past acts or be
a substitute for appeal. *See Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000);
*Schrenko v. DeKalb Cty. Sch. Dist.*, 276 Ga. 786, 794 (2003) (mandamus cannot
undo a past act); *Smith & Wesson Corp. v. City of Atlanta*, 273 Ga. 431, 433 (2001)
(mandamus not a "substitute for an appeal"). Accordingly, Coach Miller's 42
U.S.C. § 1983 claim is not barred by *McKinney* or *Cotton* because Coach Miller
can neither appeal his suspension to the appellate courts nor can he file a
mandamus to appeal or undo the suspension that he has already suffered.

9.    To be clear, the process afforded to Coach Miller denied him the
"opportunity to call witnesses" and denied him the ability to appeal up the general
chain of appeals in Georgia: local board, State Board of Education, Superior Court,
Court of Appeals of Georgia, and Supreme Court of Georgia. *See* O.C.G.A. §§ 20-
2-1160, 5-6-35. And this denial of the minimum hallmarks of American due
process was harmful because the Fulton County Personnel Report itself

conclusively established that "all three [eyewitnesses] said they did not witness any misconduct by Miller." Due process would have exonerated Coach Miller. The hearing officer and Superintendent Looney never got to hear or read any sworn testimony of these witnesses or hear Coach Miller's own sworn testimony. Superintendent Looney was able to sit as both the accuser and the ultimate decision maker, and nothing resembling a hearing with evidence ever occurred, only oral argument.

10.    Fulton County Schools is a charter district and waived the Fair Dismissal Act, O.C.G.A. § 20-2-940. The Fulton Board of Education promulgated Policy GBKL, which supplanted the Fair Dismissal Act for all contracted teacher non-renewals, terminations, and suspensions in Fulton Schools. At all times, relevant to this case Fulton County Schools proceeded in its illegal suspension of Coach Miller pursuant to Policy GBKL.

11.    In addition to his § 1983 claims, Coach Miller brings a sex-based discrimination claim under Title VII. As he was being investigated by Fulton County Schools, Coach Miller met with the then-Chief Human Resource Officer, Ron Wade. At all times relevant, Ron Wade was the highest-ranking HR official in Fulton County Schools, and Mr. Wade reported only to Superintendent Mike Looney and made recommendations to Superintendent Looney for employee discipline and termination.

12.     In mid-September 2021 in a video call with Mr. Wade and Tri-Cities HS Principal Dr. Ethel Lett, Mr. Wade made numerous comments that illegally injected and indicated a gender bias against Coach Miller for defending himself because Coach Miller was a man and A.S., his attacker, was "just a girl." Coach Miller never injected any issue of sex, but Mr. Wade continued that Coach Miller could not push A.S. off of him, regardless of who attacked who first, because she "was just a girl" and he was a man. In addition, Principal Lett asked Coach Miller if the reason he defended himself was his "ego," implying that he reacted to defend himself because of his manhood. This is direct evidence of a gender-based discrimination and evidence that his sex as a man was a motivating factor in the adverse employment action.

13.     Later, on or about September 21, 2021, at an in-person meeting in Ron Wade's office, Mr. Wade continued to make comments that Coach Miller was wrong to defend himself against A.S., even though everyone agreed that A.S. had hit him first and was aggressive, because A.S. was "just a girl." In Mr. Wade's office, Mr. Wade specifically told Coach Miller that A.S. was "just a girl" several times, openly implying that because Coach Miller was a man, he could not defend himself with force from an attack by "just a girl." Again, this is direct evidence of an impermissible sex-based discrimination at the highest level of HR officials in Fulton County Schools. On information and belief, Mr. Wade's sex-based

discrimination against Coach Miller was a motivating factor for Mr. Wade's recommendation to Superintendent Looney to first terminate and then suspend Coach Miller.

14.     Further, Coach Miller brings Title IX claims stating that his sex was a motivating factor in the decision to suspend him. He brings an erroneous outcome claim that states he is "innocent and wrongfully found to have committed an offense and there is a causal connection between the flawed outcome and sex bias." *Doe v. Rollins Coll.*, 77 F.4th 1340, 1354 (11th Cir. 2023). Here, the Fulton County Personnel Investigate Report complied all eyewitness evidence and concluded that "they did not witness any misconduct by Miller." None of these witnesses got to testify. Further, the comments by Principal Lett and Mr. Ron Wade indicate that Coach Miller was being investigated because he defended himself as a man against a female student.

15.     Finally, Coach Miller also brings race-based discrimination claim pursuant to Title VII and 42 U.S.C. § 1981. Coach Miller shows that he is a member of a protected class as an African American. Further, he shows that he suffered an adverse employment action of a twenty-day suspension. Further, upon information and belief, there are comparator non-African American employees within Fulton County Schools who have been treated more favorably when attacked by a student.

## JURISDICTION, VENUE, AND TIMELINESS

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§
1331, 1343, and 2202. Coach Miller invokes this Court's federal question
jurisdiction because each of his claims arises out of federal law.

17.     Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C § 2000e-5(f)(3) and Local
Rule 3.1(B)(3), venue is proper because the unlawful employment practices giving
rise to Coach Miller's claims occurred in this judicial district and division.

18.     Coach Miller timely filed a Charge of Discrimination against
Defendant Fulton County Schools with the Equal Employment Opportunity
Commission ("EEOC") on September 8, 2022. Coach Miller's charge number is
410-2022-09132. This EEOC charge was filed within 180 days from the date of
Coach Miller's illegal suspension of 20-days on April 1, 2022. A true and correct
copy of the stamp-filed Charge of Discrimination is attached hereto as Exhibit A.
Further, Coach Miller incorporates the entirety of Exhibit A into this Complaint by
reference, as though it were fully set forth herein.

19.     Plaintiff received a Notice of Right to Sue on October 12, 2023. This
Complaint has been filed within 90 days from the issuance of the Notice of Right
to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as
Exhibit B.

20.     This Complaint has been filed within two years of the illegal suspension of Coach Miller on April 1, 2022—the illegal, adverse employment action that forms the basis of this Complaint. Therefore, Coach Miller's § 1981, § 1983, and Title IX claims have been timely filed within the two-year statute of limitations. *See, e.g., J.I. v. Barrow Cty. Sch. Sys.*, No. 22-12817, 2023 U.S. App. LEXIS 21982, at *8 (11th Cir. Aug. 22, 2023) (two-year statute of limitations in Georgia for § 1983 and Title IX claims); *M.H.D. v. Westminster Schs.*, 172 F.3d 797, 803 (11th Cir. 1999).

21.     Defendant Fulton County Schools is located within this district and has over 20 employees. Fulton County Schools is a covered employer and is subject to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## PARTIES

22.     Plaintiff Kenneth Miller is a resident of the State of Georgia.

23.     The Fulton County School District ("Fulton County Schools") is a public corporate body with the capacity to sue and be sued organized under Georgia law and is a local governmental entity providing public services within the boundaries of the Atlanta Division of the Northern District of Georgia. Defendant may be served by personal service on its Superintendent, Dr. Mike Looney, at 6201 Powers Ferry Road Northwest, Atlanta, Georgia 30339.

24.     Dr. Mike Looney ("Dr. Looney" or "Superintendent Looney") is the Superintendent of the Fulton County School District, and he may be served by personal service at 6201 Powers Ferry Road Northwest, Atlanta, Georgia 30339.

## FACTUAL ALLEGATIONS

25.     Coach Miller is an African American male. He attended and graduated from Tri-Cities High School in East Point, Georgia. Coach Miller became a teacher and was hired at Tri-Cities as a teacher, and he wa employed by Fulton County Schools. Through hard work and a deep commitment to the students and his community, Coach Miller was promoted and became the Athletic Director for Tri-Cities High School. He was the athletic director for the 2021-2022 school year.

26.     Fulton County Schools is a charter school district located at 6201 Powers Ferry Rd. Atlanta, GA 30339. Tri-Cities High School is within Fulton County Schools.

27.     Defendant Mike Looney is the Superintendent of Fulton County Schools. He is the highest official within the school system and has ultimate decision-making authority over personnel matters.

28.     At all times relevant, Dr. Looney was the Fulton County Schools official who accused Coach Miller of wrongdoing and signed both his charge letter for termination and his charge letter for a suspension. Dr. Looney also sat as the

ultimate decision maker after the hearing officer made his findings of fact recommending a suspension of Coach Miller's contract.

29.     Ron Wade was the Chief Human Resource Officer for Fulton County Schools in the 2021-2022 school year. He reported directly to Dr. Looney. Only Superintendent Looney was a higher authority in matters of human resources. On information and belief, Ron Wade routinely made recommendations for terminations and other discipline of tenured employees.

30.     On information and belief, Mr. Wade had tremendous influence and authority to make recommendations for HR decisions, and Superintendent Looney routinely took Mr. Wade's recommendations and advice related to terminating, suspending, and otherwise disciplining teacher employees of Fulton County Schools.

31.     Mr. Wade routinely caused Dr. Looney to send charge letters and other notices of discipline under Policy GBKL.

32.     As a charter school district, Fulton County Schools waived the Fair Dismissal Act, O.C.G.A. § 20-2-940 *et seq*., and does not provide Fair Dismissal Act hearings to its contracted teacher employees.

33.     Fulton County Schools promulgated Policy GBKL titled "Employee Suspension/Termination/Demotion/Non-renewal." Policy GBKL was in effect

when Fulton County Schools suspended Coach Miller on April 1, 2022. A true and correct copy of Policy GBKL is attached hereto as Exhibit C.

34.    The process outlined in Policy GBKL is the only process Fulton County Schools uses when suspending contracted teacher employees. Policy GBKL replaced the Fair Dismissal Act in all manners for Fulton County Schools contracted teacher employees, and the Fair Dismissal Act is not available to any contracted teacher employee of Fulton County Schools.

35.    For terminations, demotions, and non-renewals, Policy GBKL provides a very similar hearing to the Fair Dismissal Act with sworn witness testimony, subpoena power to the educator, an impartial tribunal panel sitting as finders of fact, cross examination of witnesses, the right for the accused to testify, the right to submit documentary evidence, and appeal procedures to the Fulton Board of Education and State Board of Education. *See* Ex. C. Policy GBKL is subject to judicial notice pursuant to Fed. R. Evid. 201. Further, Policy GBKL is incorporated by reference as if fully set forth herein.

36.    However, for suspensions, Policy GBKL does not provide something close to a Fair Dismissal Act hearing. Policy GBKL on its face fails to provide teachers with minimum due process according to the binding precedent of *Matthews v. Eldridge*, 424 U.S. 319 (1976). For suspensions, there is only a one-

hour oral argument with no witnesses where the educator and the district each have 30 minutes for "oral argument" based on a record that no one gets to see.

37.     For suspension under Policy GBKL, there is no sworn witness testimony, no subpoena power to the educator, no impartial tribunal panel sitting as finders of fact, no cross examination of witnesses, no right for the accused to testify, and no right to submit documentary evidence. Furthermore, for suspensions of 20 days or fewer, the employee cannot appeal to any higher court or Board.

38.     For all other forms of discipline under Policy GBKL, an educator can invoke the typical appellate procedure of O.C.G.A. § 20-2-1160 by appealing to the Fulton County Board of Education and State Board of Education. But for suspension under 20 days, an educator cannot appeal. *See* Ex. C, Policy GBKL Sec. IX ("Oral argument shall last one hour and shall be recorded. Each side shall have thirty (30) minutes to present its arguments. Neither party shall have the opportunity to call witnesses. [. . .] Any employee suspending for a period longer than twenty (20) working days shall have the opportunity to appeal the Superintendent's decision to the Board.").

39.     On August 20, 2021, Coach Miller was working as the Athletic Director at Tri-Cities. The school principal, Dr. Ethel Lett, was away from the school on that day.

40.     Earlier in the day, Coach Miller and other school personnel smelled burned marijuana in a Tri-Cities classroom with several students. Coach Miller and others called in law enforcement officers to do an administrative search which found a loaded .380 handgun. Coach Miller also received a message from a parent that she had seen a Tri-Cities student, A.S., on social media posting pictures of guns. Further, Coach Miller was told that there was something bad that was going to go down at school.

41.     Coach Miller consulted with Tri-Cities assistant principal Carmena Woods Lawson and made a plan to ask A.S. about if she had guns brought to school. They brought her to an office to ask her questions. They also called for law enforcement, and Lieutenant Angela Washington and Ofc. Cleveland responded—both officers for the Fulton County Schools system police department.

42.     Coach Miller and others noticed that A.S. did not have her bookbag with her when they found her. They consulted the video surveillance system at Tri-Cities, and they discovered video surveillance footage that she had passed her bookbag in the hall to an unknown girl.

43.     Based on their experience, Coach Miller and others suspected that there might be guns in the bookbag. This later proved to be true as two guns were later found in the bookbag later that day.

44.     Coach Miller, AP Woods Lawson, Lt. Washington, and Ofc. Cleveland all got into an office to ask A.S. where the bookbag with the guns was.

45.     Coach Miller had a screenshot on his phone of the video where A.S. had passed the bookbag to another student. Immediately A.S. became aggressive and enraged. She yelled, cursed, and clinched her fists. She approached Lt. Washington in a fighting stance with clinched fists in such an aggressive manner that Lt. Washington pointed her taser at A.S. and advised her to step back.

46.     Coach Miller was concerned about the ongoing emergency of a missing loaded gun at Tri-Cities High School, so even though A.S. was enraged her continued to ask her where the bag was and who was the student who A.S. passed the bag to.

47.     A.S. began screaming in Coach Miller's face, and she began banging a metal stapler onto a desk in the office like a hammer, while in Coach Miller's personal space.

48.     Suddenly, A.S. dropped the stapler and with the same hand in one fast motion, she slapped Coach Miller's phone away from his hands. It was so fast, violent, and aggressive that Coach Miller reacted by defending himself and pushing A.S. away from him.

49.     A.S. violently pushed Coach Miller back into a bookcase and the two officers immediately jumped in to restrain A.S., who has to be tased into compliance.

50.     A.S. was arrested by Officer Cleveland and Lieutenant Washington for assaulting a teacher and a weapons charge. They write a report. A true and correct copy of the police report related to this incident is attached hereto as Exhibit D.

51.     Coach Miller and other officers later find the guns that A.S. brought to school. Later that day, in front of numerous APs and other Tri-Cities employees, Principal Lett praised Coach Miller and the law enforcement officers who found the guns and saved the day. No one ever said anything about Coach Miller being wrong for defending himself. AP Woods Lawson writes a statement identifying A.S. as the aggressor and supported that Coach Miller was attacked and defended himself.

52.     Instead of being lauded as a hero for helping law enforcement find three loaded guns at school, Coach Miller later discovered in September 2021 that he was being investigated by the system for pushing A.S. after A.S. slapped his phone away.

53.     Coach Miller was contacted by Fulton County Schools Personnel Investigator John Del Pilar. Investigator Pilar was assigned by the system to

investigate Coach Miller for the incident with A.S., and off the record Mr. Pilar Coach Miller that he did not think this incident was worthy of investigating because A.S. brought guns to school, was arrested, and attacked Coach Miller unprovoked.

54.     At some point in the investigation, Coach Miller is told that he is being placed on paid administrative leave. He is told not to go to work and that he will be on paid leave while the system investigates the incident. Coach Miller is contacted by the Fulton County Schools Chief Human Resources Officer Ron Wade. Coach Miller and Mr. Wade get on a video conference call where it immediately becomes clear that Coach Miller is being accused of wrongdoing by pushing A.S. on August 20, 2021.

55.     On information and belief, this first video conference call was in early September 2021. Coach Miller, Mr. Wade, and Principal Lett were all on the video conference call. In the call, both Mr. Wade and Principal Lett acknowledged that A.S. had made the first violent contact on Coach Miller's person. But both Mr. Wade and Principal Lett made comments evidencing a bias against Coach Miller because as a man he should not have reached in defense against A.S.

56.     In this video call, Mr. Wade continually made comments like "she is just a girl," and comparing A.S.'s gender to that Coach Miller being a grown man. Principal Lett further accused that Coach Miller let his ego get in the way, and in

doing so, implied that he reacted his masculine ego. In this conversation Coach

Miller never injected anyone's gender, but Mr. Wade made several comments

about A.S. being "just a girl."

57.    Later, Coach Miller was called into Ron Wade's office at the Fulton

County Schools central office on Powers Ferry Rd. There Coach Miller met with

Mr. Wade in his office. Again, Mr. Wade made several comments about being

"just a girl." Mr. Wade told Coach Miller that Fulton County Schools would be

recommending him for termination and that Coach Miller could resign if he

wanted to.

58.    Upon information, there were high level cabinet meetings where

Defendant Looney and Mr. Wade and other senior officials met to discuss what to

do with Coach Miller. As will be shown in discovery, Fulton County Schools

officials, including Defendant Looney, specifically said in that meeting "we can't

have a black male teacher attacking a female student. We have to fire him."

Specifically, these senior officials referenced Coach Miller's sex and race when

discussing his actions in protecting himself against A.S.'s attack.

59.    Investigator John Del Pilar completed his report on the incident for his

investigation. He interviewed all relevant witnesses and put his findings in a report.

A true and correct copy of the report is attached hereto as Exhibit E. Investigator

Pilar did an extensive investigation and made the following findings: "Cleveland

and Lawson corroborated Miller's account that AS was the aggressor, was highly agitated, and smacked the phone out of Miller's hand. [. . .] All three said that they did not witness any misconduct by Miller." Ex. E, p.3

60.    On January 11, 2022, Coach Miller received a charge letter from Defendant Looney that sought to terminate his employment. Defendant Looney signed the letter and accused him of breaking Code of Ethics for Educator rules promulgated by the Georgia Professional Standards Commission and other Fulton County Schools policies. A true and correct copy of this charge letter is attached hereto as Exhibit F.

61.    The charge letter accused him that "it was not until [A.S.] pushed your cell phone out of your hand that you violently, unnecessarily and/or forcibly reacted physically toward student AS and made contact with her person/body."

62.    The charge letter was issued pursuant to Policy GBKL and because it was a termination Coach Miller was entitled to a full hearing with witnesses, documentary evidence, and an impartial tribunal sitting as finders of fact. The hearing was set for January 24, 2022.

63.    Coach Miller hired counsel, subpoenaed evidence and witnesses, and had over a dozen witnesses prepared for his January 24, 2022, hearing. He was prepared to testify in his own defense.

64.     On January 24, 2022, the hearing commenced and the hearing Officer swore in the tribunal members. The court reported placed the hearing on the record and made a transcript. Fulton County Schools presented its opening statement through its attorney. Counsel for Coach Miller presented its opening statement as well. Then, unexpectedly Fulton County Schools called for a continuance of the hearing, which the hearing officer granted.

65.     Counsel for Fulton County Schools then notifies Counsel for Coach Miller that the termination hearing has been cancelled. Further, Coach Miller receives an amended charge letter on March 4, 2022, that states that the district was withdrawing the prior termination, and that Coach Miller will instead be suspended as of March 7, 2022, for twenty days. A true and correct copy of this amended charge letter is attached hereto as Exhibit G. Coach Miller objects that this appears to be illegal in his appeal.

66.     On March 9, 2022, Coach Miller sent an appeal of his suspension pursuant to Policy GBKL. A true and correct copy of Coach Miller's appeal of the 20-day suspension is attached hereto as Exhibit H.

67.     On March 17, 2022, Fulton County Schools acknowledged receipt of Coach Miller's suspension appeal. Fulton County Schools further sets Oral Argument for Wednesday, March 23, 2022, at the Fulton County Central Office.

68.     Coach Miller attended the oral argument at March 23, 2022. His counsel made argument of 30-minutes pursuant to Policy GBKL. Coach Miller was not allowed to testify for himself, call any witnesses in support, cross examine any witnesses, or enter any documentary evidence. He is only allowed to make legal oral argument with no witnesses the hearing officer. Counsel for Fulton County Schools also made a 30-minute argument.

69.     On or about March 28, 2022, the hearing officer Brian Burgoon recommended affirming Coach Miller's 20-day suspension. The hearing officer considered evidence that Coach Miller had no notice of including previous discipline that was irrelevant and would have likely been excluded under the rules of evidence. The hearing officer also acknowledged that A.S. slapped Coach Miller first and Coach Miller did not react until A.S. hit him first.

70.     On April 1, 2022, Superintendent Looney affirmed Coach Miller's 20-day suspension as the final decision maker under Policy GBKL.

71.     In the decision Coach Miller is found that he violated the Georgia Professional Standards Commission Code of Ethics for Educators despite acknowledging that the Georgia Professional Standards Commission had already cleared Coach Miller of all wrongdoing when investigating the exact same conduct. A true and correct copy of the final decision of the 20-day suspension is attached hereto as Exhibit I. A true and correct copy of the decision of no probable

- 22 -

cause by the Georgia Professional Standards Commission related to this incident is attached hereto as Exhibit J. In this decision, the PSC indicated that there was "no evidence of a violation of the law or Code of Ethics."

72.     Superintendent Looney knew that the teacher ethics agency had cleared Coach Miller for the exact same conduct but suspended Coach Miller anyway due to his sex-based and racial biases against Coach Miller.

**COUNT I**
**VIOLATION DUE PROCESS CLAUSE OF UNITED STATES**
**CONSTITUTION, 42 U.S.C. § 1983**
**PROCEDURAL DUE PROCESS CLAIM**

73.     Coach Miller incorporates by reference all preceding paragraphs of the Complaint.

74.     This claim is against Fulton County Schools and Superintendent Looney. Defendant Looney is a person under 42 U.S.C. § 1983 who is acting under the color of state law. Fulton County Schools can be sued under 42 U.S.C. 1983 under the doctrine of *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). Here, Policy GBKL violates the due process clause pursuant to an official policy of Defendant Fulton County School—here policy GBKL. Coach Miller asserts that Policy GBKL is unconstitutional on its face and as applied to him. Therefore, *Monell* liability is appropriate for Fulton County Schools.

75.     The elements in this Circuit for a procedural due process claim under 42 U.S.C. § 1983 are: "(1) a constitutionally protected interest in life, liberty or

property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993).

76.     Coach Miller was deprived of his property in the way of compensation guaranteed by his contract with Fulton County Schools.

77.     Coach Miller was deprived of his liberty as stigma-plus jurisprudence in this Circuit establishes. Coach Miller has forever been branded a student abuser for defending himself from an attack. As a teacher, this type of suspension is devastating to his professional and he has had to disclose it in dozens of applications he has made to other school system jobs. He feels the stigma of this suspension and has hesitated applying to certain jobs because he would have to disclose the suspension.

78.     Fulton County Schools and Defendant Mike Looney deprived Coach Miller of his protected property and liberty interests by suspending him.

79.     The process under Policy GBKL is unconstitutional because it utterly fails to allow Coach Miller a meaningful opportunity to be heard and to testify on his own behalf, call witnesses, and confront his accusers. As described herein, GBKL only provides a 30-minute argument with no witnesses. This is wholly insufficient under the precedent of *Matthews v. Eldridge*, 424 U.S. 319 (1976).

80.     This Court should follow other circuits who have found that questioning and cross examining of witnesses is the essential minimum floor for due process when the government accuses someone of serious wrongdoing. GBKL specifically excludes witnesses and does not allow cross examination. In *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) the Sixth Circuit found that cross examination of witnesses was essential to due process when the claims of wrongdoing are serious.  Here, there were no witnesses to cross examine, so GBKL fails under the test outlined in *Baum*. In *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 71 (1st Cir. 2019), the First Circuit found that the due process clause allowed a panel to question witnesses so long as the questions asked of the witnesses were reasonably calculated to expose any relevant flaws in the claims. Here, GBKL allows for no witnesses at all and sister circuits have found examination of witnesses to be a critical component of minimum due process.

81.     The doctrines of *McKinney v. Pate*, 20 F.3d 1550, (11th Cir. 1994) and *Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000) do not preclude this claim. Coach Miller was not given the ability to appeal his suspension by Policy GBKL. Further he cannot file a mandamus in state court to appeal the suspension or undo the suspension.

82.     As a direct and proximate result of both Defendants' violation of 42 U.S.C. §1983, Plaintiff suffered damages consisting of, but not limited to, lost

wages and other benefits of employment, emotional distress, mental anguish, humiliation, and pain and suffering.

83.     Coach Miller seeks a declaratory judgment that Policy GBKL is unconstitutional on its face and as applied to Coach Miller. Coach Miller further seeks an injunction from this Court to remove the illegal suspension from his record. Further upon being prevailing party, Coach Miller seeks attorneys' fees under 42 U.S.C. § 1988.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. §§ 2000e, ET SEQ.**
**SEX DISCRIMINIATION CLAIM**

84.     Coach Miller incorporates by reference all preceding paragraphs of the Complaint.

85.     This claim is only brought against Defendant Fulton County Schools as Coach Miller's employer. Fulton County Schools acts through its agents including Dr. Mike Looney, Ron Wade, and Dr. Ethel Lett.

86.     As has been described herein, all these agents of the Defendant made direct comments related to Coach Miller's sex as a male. Dr. Looney was improperly motivated by Coach Miller's sex and he discriminated against Coach Miller on the basis of his sex as a male.

87.     Further a comparator named Kristy Dixon exists that shows that a female teacher was only given a 5-day suspension when she defended herself from

an unprovoked student attack. Ms. Dixon was a female. She worked at Tri-Cities

High school. In 2008, she was attacked by a student, and she pushed the student off

of her by the neck. She only received a 5-day suspension compared to Coach

Miller's 20-day suspension.

88.    Coach Miller brings this claim under all theories of Title VII recovery

under this Circuit including direct evidence of sex discrimination, McDonnell

Douglas, and the convincing mosaic theory.

89.    Coach Miller's 20-day suspension by Fulton County Schools was an

adverse employment action.

90.    Fulton County Schools adverse employment action has caused Coach

Miller to incur damages including lost wages and benefits, emotional distress, and

mental anguish. Coach Miller seeks all damages allowed by law including front

pay, back pay, an injunction removing the suspension, compensatory damages, and

attorney's fees.

## COUNT III
## VIOLATION OF TITLE IX, 20 U.S.C. §§ 1681, ET SEQ.

91.    Coach Miller incorporates by reference all preceding paragraphs of

the Complaint.

92.    Coach Miller brings an erroneous outcome claim under Title IX.

Coach Miller shows that he was actually innocent of the charges upon which the

suspension was based. Further, the comments by Mr. Wade and Dr. Lett show

direct evidence of sex-based distinctions of who can protect themselves from a student attack. Also on information and belief, Dr. Looney made comments about Coach Miller's sex when discussing whether to termination Coach Miller with senior staff including Ron Wade. Further the circumstances of the aborted termination which disallowed Coach Miller to call any witnesses (all of whom supported his version of events) shows an inference that sex was a motivating factor in the decision to terminate and then suspend Coach Miller.

93.    Coach Miller seeks all allowable damages and relief allowable under Title IX as can be proven by a jury.

## COUNT IV
## VIOLATION OF TITLE VII, 42 U.S.C. §§ 2000e, ET SEQ.
## RACE DISCRIMINIATION CLAIM

94.    Coach Miller incorporates by reference all preceding paragraphs of the Complaint.

95.    This claim is only brought against Defendant Fulton County Schools as Coach Miller's employer. Fulton County Schools acts through its agents including Dr. Mike Looney, Ron Wade, and Dr. Ethel Lett.

96.    As has been described herein, all these agents of the Defendant made direct comments related to Coach Miller's sex as a male. Dr. Looney was improperly motivated by Coach Miller's race as a black man and he discriminated against Coach Miller on the basis of his race.

97.    On information and belief, the discovery process will provide with a comparator who is not black who faced a more favorable outcome when defending himself or herself from a student attack.

98.    Coach Miller brings this claim under all theories of Title VII recovery under this Circuit including direct evidence of race discrimination, *McDonnell Douglas*, and the convincing mosaic theory.

99.    Coach Miller's 20-day suspension by Fulton County Schools was an adverse employment action.

100.    Fulton County Schools adverse employment action has caused Coach Miller to incur damages including lost wages and benefits, emotional distress, and mental anguish. Coach Miller seeks all damages allowed by law including front pay, back pay, an injunction removing the suspension, compensatory damages, and attorney's fees.

## COUNT V
## VIOLATION OF 42 U.S.C. § 1981
## RACE DISCRIMINATION CLAIM

101.    Coach Miller incorporates by reference all preceding paragraphs of the Complaint.

102.    The elements of a 42 U.S.C. claim are fundamentally the same as Title VII race discrimination claim in the Eleventh Circuit.

103.   This claim is only brought against Defendant Fulton County Schools as Coach Miller's employer. Fulton County Schools acts through its agents including Dr. Mike Looney, Ron Wade, and Dr. Ethel Lett.

104.   As has been described herein, all these agents of the Defendant made direct comments related to Coach Miller's sex as a male. Dr. Looney was improperly motivated by Coach Miller's race as a black man and he discriminated against Coach Miller on the basis of his race. On information and belief, Dr. Looney made comments about Coach Miller's race in a meeting with senior staff in discussing why Coach Miller must be fired.

105.   On information and belief, the discovery process will provide a comparator who is not black who faced a more favorable outcome when defending himself or herself from a student attack.

106.   Coach Miller brings this claim under all theories of Title VII recovery under this Circuit including direct evidence of race discrimination, *McDonnell Douglas*, and the convincing mosaic theory.

107.   Coach Miller's 20-day suspension by Fulton County Schools was an adverse employment action.

108.   Fulton County Schools adverse employment action has caused Coach Miller to incur damages including lost wages and benefits, emotional distress, and mental anguish. Coach Miller seeks all damages allowed by law including front

pay, back pay, an injunction removing the suspension, compensatory damages, and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests and prays:

(a)     That process issue against the Defendants;

(b)     That the Court issue a declaratory judgment and injunction that Policy GBKL is unconstitutional on its face and as applied to Coach Miller and enjoin Defendant from further acts, practices and policies that violate said law; and that this Court retain jurisdiction over this action until Defendant has fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary for the court to supervise compliance;

(c)     That Coach Miller have a trial by jury on all the claims set forth herein;

(d)     That Coach Miller have any such relief as he is allowed by any and all applicable laws hereto, and as the Court deems proper and just.

Respectfully submitted 10th day of January, 2024.

/s/ Allen Lightcap
Allen Lightcap          553459
Counsel for Plaintiff

Allen Lightcap, Esq.
Counsel for Plaintiff Kenneth Miller
50 Hurt Plaza, Suite 1640
Atlanta, GA 30303
alightcap@mayerharper.com
P: 404-989-4445, F: 404-832-8203